1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10  JOHN HARDNEY,

11            Petitioner,              No. 2:05-cv-1451 LKK EFB P

12      vs.

13  THOMAS CAREY, Warden,

14            Respondent.           <u>FINDINGS AND RECOMMENDATIONS</u>

15  _____/

16      Petitioner is a state prisoner proceeding without counsel with an application for a writ of

17  habeas corpus pursuant to 28 U.S.C. § 2254.  He challenges a prison disciplinary conviction that

18  resulted from a rules violation report issued against him on March 26, 2004, while he was

19  imprisoned at California State Prison, Solano.  Petitioner seeks relief on due process grounds,

20  claiming that (1) the investigative employee assigned to assist him in preparing for his

21  disciplinary hearing failed to gather evidence and conduct interviews; (2) he was not given

22  adequate notice of the charge against him because the notice did not include the dates on which

23  the misconduct was alleged to have occurred; and (3) he was not allowed to present witnesses at

24  his disciplinary hearing.  Upon careful consideration of the record and the applicable law, the

25  undersigned recommends that petitioner's application for habeas corpus relief be denied.

26  ////

1

**I.     Background**

On March 31, 2004, Correctional Officer ("C/O") R. Edwards wrote a rules violation report ("RVR") charging petitioner with "stalking," later amended to "harassment," in violation of Cal. Code Regs. tit. 15, § 3005(a).[1]  Answer, Ex. 2 at 5, 9.[2]  C/O Edwards alleged that:

> On 3-26-04, at approximately 1230 hours, while conducting my duties as a Control Booth Officer in Building #3, Inmate Hardney, D-00599, on several occasions has been very over familiar with me.  Inmate Hardney will constantly approach the control booth during my shift to try to an [sic] start personal conversation with stating, "I want to sit and speak with you.  Could I get just a few minutes of your time so I could try and figure you out?"  He would also give unwanted compliments to me in hopes of gaining what he thought would gain him "special treatment" in the building so he may stay out.
>
> Inmate Hardney was given a direct order to stay away from the control booth and was warned that his constant interruptions with personal questions needed to stop.  I told Inmate Hardney not to speak to me unless it had to deal with CDC.  When Inmate Hardney does not get his way with privileges, he becomes very angry and begins to express this by being loud, trying to intimidate me.  Because this form of intimidation did not work with me, Inmate Hardney continued with his over familiar behavior which I believe led to stalking.  Direct orders were given to Inmate Hardney to get away from the control booth and not speak to me, on several occasions.  Inmate Hardney would sit on the dayroom floor in building #3, in an area where he had view of me in the control booth.  Inmate Hardney would sit in different areas on the dayroom floor, depending on where I was sitting in the control booth, to watch me.  When leaving Building #3 at the completion of my shift, Inmate Hardney would always be waiting at the visiting yard exit door.  Inmate Hardney always has a comment or

---

[1]  Cal. Code Reg. tit. 15, § 3005(a) provides as follows:

> (a) Inmates and parolees shall obey all laws, regulations, and local procedures, and refrain from behavior which might lead to violence or disorder, or otherwise endangers facility, outside community or another person.

[2]  Page number citations to respondent's exhibits refer to the page number assigned by respondent on the lower right of the exhibits.  Citations to page numbers in the petition refer to page numbers assigned by the court's CM/ECF docketing system rather than the page numbers assigned by petitioner.

question for me just to receive my attention.  This over familiar behavior and constantly being in an area where I am scheduled to be, has made me feel extremely uncomfortable in my work environment.

*Id.*

On March 31, 2004, the RVR was issued to petitioner.  *Id.* at 5.  V.A. Motschenbacher classified the offense as "serious" and referred the RVR to a senior hearing officer ("SHO") for a hearing.  *Id.*

Petitioner was assigned an investigative employee, C/O Marshall, pursuant to Cal. Code Regs. tit. 15, § 3315(d)(1)(A), because his placement in administrative segregation made it unlikely that he could collect and present needed evidence.[3]  *Id.* at 6.  C/O Marshall reported his interviews with petitioner and C/O Edwards, as well as three individuals identified by petitioner as witnesses: C/O R. Stewart, Sergeant J. Paradis, and Sergeant J. Lee.  *Id.* at 11-12, 14.  As reported by C/O Marshall, petitioner told him that Edwards had a history of fabricating reports of inmate misconduct.  *Id.* at 11.  In late 2003, petitioner filed a staff complaint against Edwards "for harassing and singling me out for disciplinary reasons."  *Id.*  Sergeant Paradis interviewed

---

[3]      Cal. Code Regs. tit. 15, § 3315 provides as follows:

(d) An inmate shall be assigned an employee to assist in the investigation of matters pertaining to a disciplinary action when the chief disciplinary officer or designee determines the necessity based on the following criteria.

(1) Investigative Employee.

(A) An investigative employee, as described in section 3318(a), shall be assigned when the staff designated to classify the serious rule violation determines that:

1. The complexity of the issues require further investigation.

2. The housing status makes it unlikely the charged inmate can collect and present the evidence necessary for an adequate presentation of a defense.

3. A determination has been made that additional information is necessary for a fair hearing.

3

petitioner about that complaint, which petitioner ultimately decided to withdraw "to keep peace" with Edwards. *Id.* Shortly thereafter, according to petitioner, Edwards fabricated a report that petitioner had refused to "lock up." *Id.* Since filing the staff complaint against Edwards, petitioner had not "said 3 words" to Edwards and stayed at least 10 feet away from her. *Id.* He had lost dayroom privileges for 60 days on February 28, 2004, "so how could I be in the dayroom leering and talking to Edwards?" *Id.* Petitioner had told Sergeant Lee in January 2004 that he might have a problem with Edwards, that Edwards was "on" him. *Id.* Lee told petitioner, in front of Lt. Nielsen and C/O Spencer, that he remembered petitioner telling him that Edwards had been harassing him. *Id.* Petitioner gave Marshall 26 questions to ask Edwards, five to ask Stewart, six for Lee, five for Nielsen, and ten for Paradis. *Id.*

Marshall asked Edwards to review her RVR and "add any pertinent facts that may assist the SHO." *Id.* at 12. Edwards said, "Everyday while walking across the yard to go home after work, Inmate Hardney would wait at the Education area and he would try to engage me in conversation or make a statement. This over familiar behavior has made me feel extremely uncomfortable in my work environment." *Id.*

Marshall asked Stewart if he recalled whether petitioner had filed a staff complaint against Edwards for singling him out for harassment. *Id.* Stewart did not recall that. *Id.* He remembered that petitioner had lost his dayroom privileges from February 29, 2009 to April 29, 2009, but did not know why. *Id.* Stewart told Marshall that petitioner had frequently used the dayroom before losing his privileges and that, although Stewart enforced his loss of privileges, petitioner "continually broke the restrictions." *Id.* Stewart did not recall whether petitioner was in the dayroom on March 26, 2004 until 12:30 p.m. or later (Edwards had specified on the rules violation report that petitioner harassed her on March 26, 2004 at 12:30 p.m.).[4] *Id.*

////

---

[4] Petitioner states that on March 26, 2004, at "12:00 noon," he returned to his cell from the prison law library. Pet. at 9.

Paradis told Marshall that she remembered interviewing petitioner regarding the staff complaint he had filed against Edwards. *Id.* Petitioner told Paradis that he did not want to make trouble for Edwards or create a problem for himself, so he would stay away from Edwards. *Id.*

Lee told Marshall that, while being transported to administrative segregation on March 26, 2004, petitioner asked him whether he remembered an occasion in early 2004 when petitioner complained to him, in the presence of Nielsen and Spencer, of Edwards harassing him. *Id.* at 14. Lee remembered the incident, which he had responded to by asking Edwards about petitioner. *Id.* No other inmates had complained about Edwards. *Id.*

The disciplinary hearing on the rules violation report was held on April 30, 2004. *Id.* at 6. Petitioner had requested Edwards, Stewart, Lee, Paradis, and Nielsen to appear as witnesses. *Id.* at 14. However, the report of the hearing states, "Inmate Hardney rescinded his request for the witnesses based on his acceptance of the witness's [sic] testimony as written on the Investigative Employee Report, except the inmate requested Officer Edwards to be present at the RVR hearing, which was granted." *Id.* at 6. Petitioner pleaded not guilty to the charge and stated that he had made a special effort to stay away from Edwards since January 2004, after filing the staff complaint against her in December 2003. *Id.* Petitioner further stated that "Officer Edwards never gave specific dates or times these events occurred in the [RVR]." *Id.*

Other evidence adduced at the hearing consisted of the RVR, Marshall's report, a report authored by Nielsen, and Edwards's testimony. *Id.* at 7-8. Neilsen's report relayed,

> Officer Edwards stated on several occasions Inmate Hardney has attempted to engage her in personal conversation. Officer Edwards states when Inmate Hardney sits in the day room he leers at her constantly as she performs her duties and that makes her feel very uncomfortable. Officer Edwards stated when she leaves her building at the end of the day, Inmate Hardney is always near the exit door and attempts to engage her in conversation. Officer Edwards stated due to Inmate Hardney['s] attempts to be over familiar with her she has told him not to speak to her unless it is necessary. Officer Edwards stated she feels that Inmate Hardney has been stalking her.

*Id.* at 7.

////

1       Edwards testified at the disciplinary hearing that she had reported the incidents in which

2  petitioner had watched her from the dayroom floor to her supervisor, Paradis.  *Id.* at 8.  Petitioner

3  had said to her, "I want to get to know you," "I really appreciate you," "I want to figure you

4  out," and "We can have some conversation together."  *Id.*  After he made those comments,

5  Edwards told him that they were unwanted and inappropriate.  *Id.*  When petitioner waited for

6  her near the entrance to the facility as she exited and made comments, Edwards noted the

7  occurrences on petitioner's bed card and reported them to Paradis.  *Id.*

8       Lieutenant Chirila acted as the Senior Hearing Officer at the hearing.  *Id.* at 5-8.  He

9  found petitioner guilty and imposed a forfeiture of 30 days worktime credits.  *Id.* at 8.  Petitioner

10  sought review of the guilty finding through an administrative appeal, which was denied at all

11  levels.  Answer, Ex. 4, at 33-34 & Ex. 7 at 118-19.  Petitioner then sought a writ of habeas

12  corpus from the Solano County Superior Court, which was denied.  Answer, Exs. 7, 8.  The

13  California Court of Appeal and Supreme Court similarly denied relief.  Answer, Exs. 5, 6.

14  **II.    New Argument Raised in Response to Order for Additional Briefing**

15       In his response to this court's December 7, 2010 order for supplemental briefing,

16  respondent argues, for the first time, that petitioner's claims are not cognizable in a habeas

17  corpus proceeding.  Dckt. No. 35 at 7-8.  Specifically, respondent contends that petitioner is not

18  "in custody" under the habeas statute because success on his claims would not necessarily

19  impact the duration of his sentence.  *Id.  See* 28 U.S.C. § 2254(a) ("The Supreme Court, a Justice

20  thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas

21  corpus in behalf of a person in custody . . .); *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973)

22  ("The "essence of habeas corpus is an attack by a person in custody upon the legality of that

23  custody . . .).

24       This court will not address respondent's argument raised for the first time in his

25  supplemental brief but will assume petitioner's claims are cognizable and address them on the

26  merits.  In its order for supplemental briefing, the court limited the requested briefing to the

merits of petitioner's claim that prison authorities violated his right to due process when they refused to allow him to call witnesses at his disciplinary hearing.  Respondent's argument that the petition should be dismissed is not responsive to the court's order.  Further, Rule 5 of the Rules Governing Section 2254 Cases provides that the Answer must address whether any claim raised in the petition is barred.  Respondent did not raise this argument in the Answer.  Finally, arguments and claims may not be raised for the first time in a reply or supplemental brief. *Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991) (refusing to reach argument raised for the first time in reply brief that petitioner's claim was not cognizable on federal habeas corpus); *United States v. Gigante*, 39 F.3d 42, 50 n.2 (2d Cir. 1994) ("These arguments were raised for the first time in defendants' reply brief.  Arguments may not be made for the first time in a reply brief."), *vacated on other grounds and superseded in part on denial of reh'g*, 94 F.3d 53 (2d Cir. 1996); *Keefe v. Shalala*, 71 F.3d 1060, 1066 n. 2 (2d Cir. 1995) ("We will not consider arguments raised for the first time in a reply brief."); *Highsmith v. Chrysler Credit Corp.*, 18 F.3d 434, 439 (7th Cir. 1994) ("In most circumstances, a litigant who fails to raise an argument until his reply brief will be deemed to have waived that argument.") (citing *Wilson v. O'Leary*, 895 F.2d 378, 384 (7th Cir. 1990)); *Concepcion v. United States*, 181 F. Supp. 2d 206, 231 (E.D.N.Y. 2002) (stating, in adjudicating a habeas petition, "it is well settled . . . that a party may not raise an argument for the first time in a reply brief."); *Romero-Aguilar v. Holder*, 397 Fed.Appx. 399, 2010 WL 3825644 (9th Cir. Sept. 29, 2010) (issues raised for the first time in a reply brief are waived).

## III.    Standards for a Writ of Habeas Corpus

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States.  28 U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or application of state law.  *See Wilson v. Corcoran*, 562 U.S.___, ___, 131 S. Ct. 13, 16 (2010); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Park v. California*, 202 F.3d 1146, 1149 (9th Cir.

2000).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the state court decision. *Stanley v. Cullen*, 633 F.3d 852, 859 (9th Cir. 2011) (*citing Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). Nonetheless, "circuit court precedent may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably." *Stanley*, 633 F.3d at 859 (quoting *Maxwell v. Roe*, 606 F.3d 561, 567 (9th Cir. 2010)).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. *Price v. Vincent*, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.[5] *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Williams*, 529 U.S. at 413; *Chia v. Cambra*, 360

---

[5] Under § 2254(d)(2), a state court decision based on a factual determination is not to be overturned on factual grounds unless it is "objectively unreasonable in light of the evidence presented in the state court proceeding." *Stanley*, 633 F.3d at 859 (quoting *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004)).

F.3d 997, 1002 (9th Cir. 2004).  In this regard, a federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 412.  *See also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *Lockyer*, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'").  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S.___,___,131 S. Ct. 770, 786 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*,131 S. Ct. at 786-87.

If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims. *Delgadillo v. Woodford*, 527 F.3d 919, 925 (9th Cir. 2008); *see also Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

The court looks to the last reasoned state court decision as the basis for the state court judgment. *Stanley*, 633 F.3d at 859; *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. *Edwards v. Lamarque*, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc).  "When a federal claim has been presented to a state court and the state court has denied relief, it may be

1  presumed that the state court adjudicated the claim on the merits in the absence of any indication

2  or state-law procedural principles to the contrary." *Harrington*, 131 S. Ct. at 784-85.  This

3  presumption may be overcome by a showing "there is reason to think some other explanation for

4  the state court's decision is more likely." *Id*. at 785 (citing *Ylst v. Nunnemaker*, 501 U.S. 797,

5  803 (1991)).  Where the state court reaches a decision on the merits but provides no reasoning to

6  support its conclusion, a federal habeas court independently reviews the record to determine

7  whether habeas corpus relief is available under § 2254(d).  *Stanley*, 633 F.3d at 860; *Himes v.*

8  *Thompson*, 336 F.3d 848, 853 (9th Cir. 2003).   "Independent review of the record is not de novo

9  review of the constitutional issue, but rather, the only method by which we can determine

10  whether a silent state court decision is objectively unreasonable." *Himes*, 336 F.3d at 853.

11  Where no reasoned decision is available, the habeas petitioner still has the burden of "showing

12  there was no reasonable basis for the state court to deny relief." *Harrington*, 131 S. Ct. at 784.

13       When it is clear, however, that a state court has not reached the merits of a petitioner's

14  claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal

15  habeas court must review the claim de novo.  *Stanley*, 633 F.3d at 860; *Reynoso v. Giurbino*, 462

16  F.3d 1099, 1109 (9th Cir. 2006); *Nulph v. Cook,* 333 F.3d 1052, 1056 (9th Cir. 2003).

17  **IV.   Petitioner's Claims**

18       Petitioner argues that he was deprived of due process because: (1) C/O Marshall, the

19  investigative employee assigned to assist him in preparing for his disciplinary hearing, failed to

20  gather evidence and conduct interviews; (2) he was not given adequate notice of the charge

21  against him because the notice did not include dates on which the misconduct was alleged to

22  have occurred; and (3) he was not allowed to present witnesses at his disciplinary hearing.

23       In denying petitioner's state court petition, which raised the same claims, the Solano

24  County Superior Court ruled:

25          Petitioner has not stated a prima facie case for relief.  (*People v.*
           *Duvall* (1995) 9 Cal.4th 464, 475.)  Even assuming that Petitioner
26          had not rescinded his request for witnesses other than the reporting

10

1        officer, Petitioner fails to demonstrate that denial of his due
process right to call witnesses resulted in prejudice.  (*Chapman v.*
2        *California* (1967) 386 U.S. 18, 24; *In re Angela C.* (2002) 99
Cal.App.4th 389, 391; *People v. Belton* (1992) 6 Cal.App.4th
3        1425, 1433.)  Petitioner does not indicate what his witnesses would
have said or how their testimony would have affected the outcome
4        of the hearing.

5        Furthermore, Petitioner received adequate advance written notice
of his rule violation.  Though prison officials did not specify the
6        exact times and dates of Petitioner's harassing conduct, the
advance written notice provided in the Rules Violation Report met
7        due process requirements to give Petitioner a chance to marshal the
facts in his defense and to clarify the nature of the charges.  (*Wolff*
8        *v. McDonnell* (1974) 418 U.S. 539, 564.)  Penal Code section
2832(c)(1)(A), prescribing the written notice to be provided to an
9        inmate prior to a disciplinary hearing, was intended to codify
existing constitutional due process principles and does not provide
10       Petitioner with any additional protection.  (*In re Estrada* (1996) 47
Cal.App.4th 1688, 1699.)

11

12   Answer, Ex. 8 at 2.  In its order denying relief, the California Court of Appeal stated: "Petitioner

13   has not demonstrated prejudice and is therefore not entitled to relief.  (*In re Winn* (1975) 13

14   Cal.3d 694, 698 [petitioner bears the burden of showing prejudice].)"  Answer, Ex. 9.  The

15   California Supreme Court issued a summary denial.  Answer, Ex. 6.  As the California Court of

16   Appeal gave the last reasoned decision on petitioner's claims, this court must determine whether

17   that decision was contrary to, or an unreasonable application of, clearly established federal law.

18   *Stanley*, 633 F.3d at 859.[6]

19   ////

20   ////

21

22        [6] Although short, the decision of the California Court of Appeal was not "unexplained."
An "unexplained" order means "an order whose text or accompanying opinion does not disclose
23   the reason for the judgment."  *Nunnemaker*, 501 U.S. at 802.  Here, the Court of Appeal
reasoned that petitioner had failed to demonstrate that any errors in the prosecution of his
24   disciplinary violation resulted in prejudice.  The Court of Appeal also clearly addressed the
merits of petitioner's claims.  *See Lajoie v. Thompson*, 217 F.3d 663, 669 n.7 (9th Cir.  2000)
25   ("We look to the decision of the highest state court to address the merits . . . in determining
whether the state court's decision is contrary to clearly established federal law.").  Accordingly,
26   this court will review the decision of the California Court of Appeal, and not the decision of the
Solano County Superior Court, as the last reasoned decision on petitioner's claims.

1      **A. Legal Standards**

2          **1. Due Process Requirements for Prison Disciplinary Hearings**

3          It is clearly-established that inmates subjected to disciplinary action that carries a

4      potential loss of good-time credits are entitled to certain procedural protections under the Due

5      Process Clause, but are not entitled to the full panoply of rights afforded to criminal defendants.

6      *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974); *see also Superintendent v. Hill*, 472 U.S. 445,

7      455-56 (1985).  The Constitution entitles an inmate threatened with good-time credit loss to: (1)

8      advance written notice of the charge against him; (2) an opportunity "to call witnesses and

9      present evidence in his defense when permitting him to do so will not be unduly hazardous to

10     institutional safety or correctional goals"; and (3) a written statement of the evidence relied on

11     and the reasons for the disciplinary action taken.  *Wolff*, 418 U.S. at 563-66.  However, "[p]rison

12     officials must have the necessary discretion to keep the hearing within reasonable limits and to

13     refuse to call witnesses that may create a risk of reprisal or undermine authority, as well as to

14     limit access to other inmates to collect statements or to compile other documentary evidence."

15     *Id.* at 566.  Prison officials may, but are not required to, explain at the time of the hearing why

16     witnesses or evidence were refused.  *Id.* at 566; *Ponte v. Real*, 471 U.S. 491, 497 (1985).

17         **2. Harmless Error Standards**

18         Petitioner is entitled to habeas relief on his claims only if the alleged errors at his

19     disciplinary hearing are deemed prejudicial under the "harmless error" test articulated in *Brecht*

20     *v. Abrahamson*, 507 U.S. 619, 637-38 (1993).  *Fry v. Pliler*, 551 U.S. 112, 121-22 (2007).[7]

21     Under *Brecht*, "the standard for determining whether habeas relief must be granted is whether

22     the . . . error 'had substantial and injurious effect or influence in determining the jury's verdict.'"

23

24         [7]  The erroneous denial of witnesses at a disciplinary hearing is subject to harmless error
       review.  *Knight v. Evans*, No. C 05-3670 SBA (PR), 2008 U.S. Dist. LEXIS 79058, * (N.D. Cal.
25     Sept. 4, 2008) (citing *Grossman v. Bruce*, 447 F.3d 801, 805 (10th Cir. 2006) (joining the
       Second, Fourth, and Seventh Circuits applying harmless error review to disciplinary proceedings
26     in federal prisons).

1    *Brecht*, 507 U.S. at 623, 637.  In making this determination, the judge asks directly, "'Do I, the

2    judge, think that the error substantially influenced the jury's decision?'"  *O'Neal v. McAninch*,

3    513 U.S. 432, 436 (1995).  If a federal habeas judge is in "grave doubt" about whether a

4    constitutional  error "had substantial and injurious effect or influence in determining the jury's

5    verdict," the error is not harmless and "the petitioner must win."  *Id.* at 436, 445.  While there is

6    no burden of proof per se, *Shaw v. Terhune*, 380 F.3d 473, 478 (9th Cir. 2004), a reviewing court

7    "look[s] to the State to instill . . . a 'fair assurance' that there was no effect on the verdict."

8    *Payton v. Woodford*, 346 F.3d 1204, 1217 (9th Cir. 2003) (citation omitted), *overruled on other*

9    *grounds* by *Brown v. Payton*, 544 U.S. 133 (2005).  Further, when, as here, a state court has

10   found a constitutional error to be harmless beyond a reasonable doubt, a federal court may not

11   grant habeas relief unless the state court's determination is objectively unreasonable." *Towery v.*

12   *Schriro*, 641 F.3d 300, 307 (9th Cir. 2010).

13       **B.  Performance of Investigative Employee**

14       Petitioner claims that C/O Marshall conducted a limited investigation that deprived him

15   of due process.  Specifically, he contends that Marshall failed to ask Edwards all of the questions

16   petitioner told him to ask her.  Pet. at 11-12, 17, 20.  He also argues that Marshall failed to obtain

17   the "dates" the alleged harassment occurred, "as well as gather other important information and

18   evidence and screen witnesses in preparation of his defense."  *Id.* at 18.

19       *Wolff* instructs that an inmate should be provided assistance from a fellow inmate or staff

20   member where the inmate is illiterate or the issue is so complex that it is unlikely that the inmate

21   could gather and present evidence necessary for an adequate comprehension of the case.  418

22   U.S. at 470.  Here, petitioner's assignment of an investigative employee was based not on

23   illiteracy or complexity of the case pursuant to *Wolff*, but rather on his housing status pursuant to

24   Cal. Code Regs. tit. 15, § 3315(d)(1)(A).  Answer, Ex. 2 at 6.  Petitioner does not argue that he is

25   illiterate or that the case was complex; indeed, the court's review of the record of the disciplinary

26   proceedings reveals that the case was straightforward.  Thus, petitioner has no constitutional

1   entitlement to *any* assistance from an investigative employee under United States Supreme Court

2   precedent.  Petitioner has not shown that clearly-established federal law provided him with a

3   right to Marshall's assistance, much less a right to have Marshall ask all of the questions

4   petitioner wanted him to ask, or to conduct an investigation that petitioner believed was

5   thorough.  *Trujillo v. Vaughn*, 269 Fed. Appx. 673, 674 (9th Cir. 2008) ("[T]he assignment of an

6   investigative employee under Cal. Code Regs. tit. 15 § 3315(d)(1) does not equate to a

7   determination that [petitioner] had a federal due process right to such assistance pursuant to

8   *Wolff*.").  Accordingly, petitioner is not entitled to relief on his claim that the investigation

9   conducted by Marshall violated his right to due process.

10           **C.  <u>Request for Witnesses</u>**

11           Petitioner claims that prison authorities violated his right to due process when they

12   refused to allow him to call witnesses at the disciplinary hearing and failed to ask enough

13   questions of Edwards, the witness who *was* present at the hearing.  Petitioner explains that after

14   Edwards testified at the hearing that she told Sgt. Paradis the times and dates that she observed

15   petitioner harassing her, petitioner asked CHO Chirila to contact Paradis so that Paradis could

16   "deny or confirm the statement c/o Edwards made."  Pet. at 12, 20-21.  Petitioner alleges that

17   Chirila "denied the witness without justification and explanation, then falsely alleged petitioner

18   'rescinded' his request for witnesses."  Pet. at 20.

19           Petitioner states that, if asked, Paradis could have confirmed whether or not Edwards had

20   reported to him the dates of petitioner's allegedly harassing conduct.  Answer, Ex. 7 at 92; Pet. at

21   20.  Petitioner explains that "Sergeant Paradis was a very important witness, who could have

22   corroborated petitioner's statement (that c/o Edwards did not report any misbehavior to him) that

23   also could have cleared petitioner of the harassment allegations."  Pet. at 21.  In his April 25,

24   2011 supplemental brief, petitioner states that "Paradis would have denied that Edwards reported

25   harassment allegations to him."  Dckt. No. 39 at 5.  Petitioner denies that he rescinded his

26   request for witnesses to appear at the hearing, as noted on the disciplinary hearing report.  Pet. at

14

13, 20.  He also notes that prison regulations provide that "whether or not the inmate requests a

witness, witnesses may be called if the official conducting the hearing determines the witnesses

may have information necessary to the finding of fact."  *Id.* at 21; Cal. Code Regs. tit. 15,

§ 3315 (e)(3).

As set forth above, the disciplinary hearing report reflects that petitioner waived the

presence of all witnesses at the hearing except witness Edwards.  Respondent affirms that

"[a]ccording to the SHO, Hardney rescinded his request for witnesses."  Answer at 10.  In

connection with supplemental briefing requested by this court, respondent has filed the

declaration of SHO Chirila.  Mr. Chirila declares that, while he does not have an independent

recollection of petitioner's disciplinary hearing, he believes the report of the hearing accurately

records that petitioner waived his right to the presence of live witnesses, other than Edwards, at

the hearing.  Dckt. 35-8 at 1.  He explains that his practice was to go through a checklist,

designed for use at disciplinary hearings, and to write down information on the checklist as he

covered each topic.  *Id.* at 2.  "For example, if an inmate was assigned an investigative

employee, I wrote that on the checklist.  If an inmate requested witnesses or objected to any

witness testimony that was denied, I wrote that on the checklist."  *Id.* After the hearing was

concluded, the handwritten notes from the checklist were transcribed onto the final report by

inmates.  *Id.*  Although Chirila did not sign off on petitioner's final report, he has "no reason to

believe that the lieutenant who signed the report would sign something that was different than

what was written on my checklist."  *Id.*  Chirila also declares:

> The Senior Hearing Officer of an RVR hearing acts similarly to an
> Administrative Law Judge, and can deny witnesses because they
> will not provide any new or relevant information.  If the final RVR
> states that Hardney rescinded his request for witnesses then
> Hardney and I stipulated that the testimony documented in the
> investigative employee's report was sufficient.  I would not have
> written that Hardney rescinded his request on my checklist if he
> had not.  Based on my normal practice, I know that if Hardney
> objected to the remaining staff witnesses' exclusion from the RVR
> hearing, I would have written that down on my checklist.

*Id.* at 3.

1   Respondent has also filed the declaration of Captain V. Motschenbacher, who signed the

2   final report for petitioner's disciplinary hearing. Dckt. No. 35-9. Motschenbacher states that it

3   was "common practice" for "one correctional lieutenant to verify the accuracy of and sign the

4   final rules violation report for another lieutenant who was unable to sign the final report in a

5   timely manner due to vacation. etc." *Id.* at 2. He declares that, although he does not have an

6   independent recollection of signing the final report, his common practice, when reviewing

7   reports for other correctional lieutenants, was:

8           to compare the handwritten notes from the checklist the
            correctional lieutenant prepared during the disciplinary hearing
9           with the final type-written report. If the checklist and the final
            report matched, I would sign the final rule violation report. If the
10          information on the final report was not an accurate reflection of the
            checklist, I would not sign the final report and would return the
11          final report to be revised with the accurate information.

12  *Id.* Lt. Motschenbacher further declares that he believes the report "accurately reflects what was

13  on then-correctional lieutenant Chirila's checklist as it was in my normal practice to only sign a

14  final report if it was an accurate reflection of the senior hearing officer's written checklist." *Id.*

15          There is no indication from the record of the disciplinary hearing that petitioner objected

16  at any time to the absence of witnesses at the hearing or that he asked for any particular witness,

17  other than Edwards, at any time during the hearing. Specifically, the record does not reflect that

18  petitioner requested that Paradis come to the hearing after Edwards testified. Nor does the

19  record support petitioner's blanket assertion that he "did not rescind his witnesses." However,

20  assuming arguendo that prison authorities erred in refusing to allow petitioner to call live

21  witnesses at the disciplinary hearing, or in failing to ask Edwards additional questions at the

22  hearing, any error was harmless.

23          First, petitioner did not indicate in his petition to the Superior Court, and has not

24  indicated in his federal petition, what questions he wished asked of Edwards that were refused by

25  SHO Chirila. Accordingly, petitioner has failed to show that SHO Chirila's refusal to ask

26  questions had a substantial and injurious effect on the outcome of the proceeding. Nor has

16

1   petitioner explained what any witnesses, other than Paradis, would have testified to at the

2   hearing.  He has therefore failed to establish that prison authorities violated his constitutional

3   rights in failing to call these witnesses.  *See Bostic v. Carlson*, 884 F.2d 1267, 1273 (9th Cir.

4   1989) ("The inmate, however, must inform the committee of the nature of the testimony each

5   witness will deliver in order to allow the committee to determine whether institutional concerns

6   would preclude calling the witnesses").

7          The remaining question is whether testimony from Paradis that Edwards did not tell him

8   the times and dates of petitioner's acts of misconduct would have had a substantial and injurious

9   effect or influence on the verdict in this case.  It is true that if Paradis had testified that Edwards

10  had not reported the dates (as Edwards testified she had), such testimony would have struck a

11  blow to Edwards's credibility.  *See Graham v. Baughman*, 772 F.2d 441, 445 (8th Cir. 1985)

12  ("the inmate "faces a severe credibility problem when trying to disprove the charges of a prison

13  guard.").  However, petitioner's guess as to what Paradis, or any other witness, would have

14  testified to is pure speculation.  Speculation is insufficient to establish that the failure to call

15  Paradis had a substantial and injurious effect on the outcome of the proceedings.

16         Putting that aside, this court does not find that testimony by Paradis that Edwards did not

17  tell him the dates of the harassment would have affected the outcome of the hearing.  Petitioner's

18  assertion that "Paradis testimony would have corroborated petitioner's testimony that he did not

19  harass Edwards" is overbroad.  Paradis's testimony was possibly useful to cast doubt on

20  Edwards' testimony that she reported specific acts of harassment to Paradis, but it could not have

21  established that petitioner did not engage in the alleged acts of harassment.  Paradis's testimony

22  would have had no direct relevance to whether petitioner actually harassed Edwards.  At most, it

23  would have raised a question about whether Edwards actually told her supervisor about

24  petitioner's behavior.  In other words, Paradis's testimony was relevant to a relatively minor

25  collateral matter but would not have had a significant impact on the verdict.  *See Graves v.*

26  *Knowles*, 231 Fed. Appx. 670, 672, 2007 WL 1417421, *1 (9th Cir. May 9, 2007) (any error that

17

1  may have resulted from petitioner's inability to call witness harmless where the witnesses were

2  not present during cell search during which contraband was found and did not have direct

3  knowledge of the crime).

4         After a review of the record, this court is not left in "grave doubt" as to whether the

5  denial of Paradis's testimony had a substantial and injurious effect on the outcome of petitioner's

6  disciplinary proceedings, and thus agrees with the state court that any error in this regard was

7  harmless.  Assuming arguendo that petitioner's request to call Paradis as a witness at the

8  disciplinary hearing was denied, the decision of the California Court of Appeal that petitioner

9  failed to demonstrate prejudice is not objectively unreasonable and should not be set aside.  Nor

10 is the state court's decision contrary to or an unreasonable application of the decision in *Brecht*.

11 Accordingly, petitioner is not entitled to habeas relief on this claim.

12        **D.  Failure to Provide Dates and Times of Petitioner's Alleged Misconduct**

13        Petitioner claims throughout the petition that his right to due process was violated

14 because he was not advised of the dates and times that the alleged acts of harassment took place.

15 Petitioner notes that pursuant to the California Penal Code, when a prisoner is accused of

16 behavior that might lead to a denial of time credits, he is entitled to notice of the dates and times

17 that the acts of misconduct took place.  Pet. at 16.  *See also* Cal. Penal Code § 2932(1)(A) ("The

18 written notice shall include the specific charge, the date, the time, the place that the alleged

19 misbehavior took place . . .).  Petitioner argues that "without 'dates' to determine 'when' the

20 misconduct occurred there is no way to establish if petitioner received 'notice' of the rules

21 violation in a timely manner as required by Penal Code section 2932(a)(1), nor can it be

22 established 'when' petitioner became a 'immediate threat' in general population requiring his

23 placement in administrative segregation under CCR § 3335(a)."  Pet. at 17.  Petitioner also

24 argues that failing to notify him of the exact dates of the misbehavior prejudiced his ability to

25 "establish a defense."  *Id.* at 19.

26 ////

1      Petitioner notes that C/O Edwards stated at one point that petitioner would "follow her

2  across the yard" but at another point that petitioner "would be waiting on [Edwards] at the

3  visiting yard exit door at the completion of her shift." *Id.* at 27. Petitioner argues that these

4  allegations are inconsistent and unfairly changed the allegations against him after the initial

5  report, and that he needed to know precise dates and time in order to respond to the charges

6  against him. *Id.* at 27-28. Petitioner further complains that the rules violation report "does not

7  establish 'when' or even 'about when' the events occurred." *Id.* He argues that a failure to

8  apprise him of exact dates and times "deprived me of pointing out to the hearing officer the

9  inconsistencies in her statements and challenge her credibility where other inconsistencies could

10  have manifested and developed that would have changed the outcome of the hearing." *Id.* at 28.

11      The Supreme Court has held that "written notice of the charges must be given to the

12  disciplinary-action defendant in order to inform him of the charges and to enable him to marshal

13  the facts and prepare a defense." *Wolff*, 418 U.S. at 564. "The notice should alert the inmate to

14  the rule that he allegedly violated and summarize the facts underlying the charge." *Whitford v.*

15  *Boglino*, 63 F.3d 527, 534 (7th Cir. 1995). In this case, petitioner was given notice of the rule he

16  allegedly violated and the facts underlying the charge, as related by C/O Edwards. He was also

17  given notice that one of the dates on which his alleged conduct occurred was March 26, 2004.

18  In his defense at the disciplinary hearing, petitioner explained that he filed a complaint against

19  Officer Edwards in 2003 for "singling [him] out" and that he had made a "special effort" to stay

20  away from Edwards since that time. Answer, Ex. 2 at 6. He also provided evidence that he did

21  not come into the dayroom on March 26, 2004, that he had been barred from the dayroom for

22  sixty days starting on February 28, 2004, that he had previously filed a complaint against

23  Edwards for harassing him and singling him out, and that he had complained that Edwards had a

24  history of fabricating reports of inmate misconduct. It therefore appears that petitioner was able

25  to mount a defense to the charges against him even without knowing every single date on which

26  ////

the alleged violations occurred.[8]  Under these circumstances, the notice given to petitioner was sufficient, under *Wolff*, to comport with due process.  *See Ball v. Grams*, 337 Fed. Appx. 566, 568-69, 2009 WL 2132668 (7th Cir. July 15, 2009) (notice of disciplinary charges against prisoner was sufficient despite fact that it did not specify precise dates and locations of the misconduct because petitioner could still gather evidence to mount a defense against the charges).  While identifying the specific time and date of the charge misconduct if clearly the preferred and appropriate procedure, the fact that the notice may not have complied with prison regulations because it did not include dates and times does not constitute a federal constitutional claim.

Petitioner has not cited any Supreme Court authority which holds that notice of disciplinary charges is insufficient unless it includes specific dates and times of the alleged behavior.  Without any such authority, and in light of petitioner's ability to present a defense to the charges against him, it was not unreasonable for the California courts to conclude that petitioner received adequate notice of the charges against him.  Accordingly, he is not entitled to federal habeas relief on this claim.

**V.    Conclusion**

For all of the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned

---

[8]  The court notes that when Marshall asked Correctional Lieutenant M. Nielsen whether, when Edwards made the allegations against petitioner, he asked her for the "specific dates the event occurred," Nielsen responded, "As On going, [sic] could not give a specific date."  Dckt. No. 35-1 at 36.  Indeed, petitioner was charged with ongoing behavior that occurred over a period of time; therefore, the failure to report or to remember specific dates and times does not appear to be unreasonable or suspicious.

"Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).  In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case.  *See* Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED:  September 12, 2012.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE